Julie A. Ault, Esq. (SBN 186914)
Kaelee M. Gifford, Esq. (SBN 303533)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:  (949) 719-7212
Fax:   (949) 719-7210
Email: kgifford@olenproperties.com
Attorneys for Plaintiffs: Olen Properties Corp. and Igor Olenicoff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEN PROPERTIES, CORP. a Florida corporation; IGOR OLENICOFF, an individual<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY, a New York corporation; ISLAND HOTEL COMPANY LIMITED, a Bahamian company dba ATLANTIS PARADISE ISLAND RESORT; BROOKFIELD HOSPITALITY PROPERTIES, LLC, a Delaware limited liability company; Marriott International, Inc.; and DOES 1 through 100 inclusive,<br><br>Defendants. | CASE NO. 8:22-CV-758<br><br>**PLAINTIFFS' COMPLAINT FOR**<br><br>1. VIOLATION OF BUS. & PROF. CODE §17200;<br>2. FRAUD<br>3. NEGLIGENT MISREPRESENTATION<br>4. UNJUST ENRICHMENT<br>5. BREACH OF CONTRACT<br>6. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br><br>DEMAND FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3), in that this is a civil action between citizens of Florida, New York, Delaware as well as citizens of the Bahamas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue as to Defendants is proper in this judicial district because Defendant AMERICAN EXPRESS COMPANY (hereinafter referred to as "AMERICAN EXPRESS"), does substantial business in this judicial district, Plaintiffs entered into the Cardmember Agreement in California, and some of the acts complained of occurred in this judicial district. Venue as to Defendant Island Hotel

Company Limited, Defendant Brookfield Hospitality Properties, LLC, and Marriott International, Inc. is proper in this judicial district because they are businesses with hospitality properties all over the world which regularly solicits and conducts substantial business from citizens from the United States, including California.

## THE PARTIES

3.  Plaintiff Olen Properties Corp. (hereinafter referred to as "Olen") is, and at all relevant times herein was, a Florida corporation authorized to conduct business in the State of California, with a primary business in the County of Orange. Plaintiff Igor Olenicoff ("Igor") is an individual and the cardholder under the American Express member agreement. Collectively, Igor and Olen may be referred to as "Plaintiffs."

4.  Upon information and belief, according to the Amended and Restated Certificate of Incorporation, Defendant American Express is incorporated in the State of New York and has its principal place of business in the City of New York, State of New York.

5.  Upon information and belief, Defendant Island Hotel Company Limited (hereinafter referred to as "IHCL") is a Bahamian business entity doing business as Atlantis Paradise Island Resort and Marina, with a principal place of business in Nassau, the Bahamas.

6.  Upon information and belief, Defendant Brookfield Hospitality Properties, LLC (hereinafter referred to as "Brookfield") is a Delaware limited liability company with a principal place of business in New York and doing business in the Bahamas at the Atlantis Paradise Island Resort and Marina.

7.  Upon information and belief, Defendant Marriott International, Inc. ("Marriott") is a Delaware Corporation. Collectively, "IHCL", "Brookfield" and "Marriott" may be referred to as the "Atlantis Defendants."

8.  The true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to

reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

9. Based upon information and belief, Plaintiffs alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendant.

## GENERAL ALLEGATIONS

10. This is a civil action primarily seeking from Defendants American Express, IHCL and Brookfield restitution and disgorgement of profits gained as a result of charging Olen for services neither authorized or nor rendered. Plaintiffs are the owners of a corporate yacht, MY RUSALKA. On or about March 14, 2020, Olen CEO, Igor Olenicoff arrived at the Atlantis Paradise Island Resort and Marina (the "Atlantis Marina") with a reservation to dock the corporate yacht, MY RUSALKA and enjoy the resort for a period of three months. Unfortunately, almost immediately upon arrival, Plaintiffs learned of the onset of the COVID-19 pandemic and were told to immediately evacuate from the Bahamas immediately. The entire Atlantis resort and marina were shut down and guests were taken to the airport to leave out of Nassau, as the Port Control Authorities were also shut down. There was no other option than to leave MY RUSALKA tied at the Atlantis Marina, without any services offered by Defendants until a time the marina and Nassau Port Control reopened, travel from the United States was allowed, and the crew permitted to return.

11. Due to the emergency nature of situation, no one was available for Plaintiffs to discuss the mooring fee or any other charges, nor did Plaintiffs agree to any. Moreover, no one was available for Plaintiffs to discuss the emergency protocol, and as a result Plaintiffs did not authorize the Atlantis Marina to charge the American Express, and neither Plaintiffs nor any authorized representative signed any mooring contract with the Atlantis Marina or authorize anyone to sign a mooring or other contract with the Atlantis Marina. Specifically, Plaintiffs did not consent or agree to any particular jurisdiction or venue for any potential legal dispute between Plaintiffs and any of the Defendants.

12. Plaintiffs are informed and believes, and based thereon alleges, that the "Acknowledgment, Agreement and Release" on file with the Atlantis Marina was signed by person by the name of "William Steely," who was a deckhand on board the vessel at the time of arrival, not Plaintiffs or with authority to bind Plaintiffs to any terms. A true and correct copy of the Atlantis Paradise Island Marina Acknowledgment Agreement and Release is attached hereto as **Exhibit A**.

13. Neither the decision to abandon the vessel at the Atlantis Marina nor the length of time it remained there were in Plaintiffs' control, as the vessel was restricted by Port Authority. Additionally, due to the emergency situation, no terms were negotiated. The vessel was legally not authorized to leave the marina, and as such, one crew member remained aboard to secure and care for MY RUSALKA during Plaintiffs' absence. On or about July 17, 2020, Plaintiffs were permitted to return to the Bahamas and remove the vessel from the Atlantis Marina.

14. Despite the unprecedented circumstances of the sudden evacuation and COVID-19 pandemic situation, Defendants charged Plaintiffs Express card with the regular daily "room charge" during the entire time its vessel was *involuntarily* abandoned at the Atlantis Marina due to port authority restrictions. The full rate was charged daily despite the fact that neither Plaintiffs nor any related parties received any of the value of those charges in return. The "room charge" assessed by Defendants was clearly a misnomer, **as there was no one occupying the hotel at any time**, and neither the Atlantis Marina nor the Resort were staffed and open to provide any services. As such, Plaintiffs did not receive **any** of the usual benefits or services from Atlantis Marina that would normally be included in exchange for the charges. The substantial, **non-authorized** charges totaling approximately $100,000.00 to Plaintiffs' American Express are unwarranted and amount to an improper windfall to the Atlantis Defendants.

15. Prior to filing this lawsuit, Plaintiffs made several attempts to communicate with Defendants and formally dispute the charges. However, Defendants American Express, IHCL and Brookfield failed to apply appropriate accommodation or credit to the charges to Olen's American Express account. Defendants improperly insist on payment in full by Olen **despite the fact that Defendants did not provide goods or services to justify the charges**.

Plaintiffs Complied with American Express Claims Resolution Requirements

16. Pursuant to the American Express Cardmember Agreement, Plaintiffs were required, before "beginning a lawsuit, mediation or arbitration . . . to send a written notice (a *claim notice*) to each party against whom a claim is asserted." Plaintiffs complied with this requirement by sending the Claim Notice to the specified American Express address by Federal Express on September 10, 2021. A true and correct copy of the Claim Notice is attached hereto as **Exhibit B**. While counsel for Plaintiffs and counsel for American Express, Aiman Farooq, did engage in settlement negotiations, American Express was unwilling to resolve this matter informally and did not accept, nor counter Plaintiffs' settlement offer. . Plaintiffs also submitted dispute of the charges directly to the Atlantis Paradise Island Marina Report, and his request for credit was denied on or about August 10, 2021.

**FIRST CAUSE OF ACTION**

**Unlawful, Unfair, and Fraudulent Business Practices in Violation of**

**California Business and Professions Code § 17200,** *et seq*.

**(Against All Defendants)**

17. Plaintiffs repeats and realleges paragraphs 1 through 16 hereof, as if fully set forth herein.

18. The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. Defendants violated, and continue to violate, the UCL by charging Plaintiffs for services that were not received. Specifically, Defendants violated the UCL by:

(a) Charging Plaintiffs' credit card without written or oral authorization

(b) Failing to engage in a good faith dispute resolution with Plaintiffs, rather only insisting without justification that Plaintiffs be responsible for the full amount due.

(c) Charging Plaintiffs for services that were not only not received, but were not even available, such as the resort amenities, access to the common areas, restaurants, concierge, staff assistance, etc.

(d) Charging Plaintiffs for services that it could not use due to the COVID-19 pandemic, due to not no fault of Plaintiffs, yet obtained a windfall from charging Plaintiffs the full fee, yet not offering any sort of reasonable accommodation despite the emergency nature of the situation.

19. Defendant Atlantis is not entitled to the payment because, as set forth above, it did not provide any services or benefits to Plaintiffs. Moreover, Atlantis did not incur any expense or losses as a result of Plaintiffs' vessel being docked there since no staff was paid to attend to the vessel and no other vessel would have been permitted to dock during the time of the shutdown anyway.

20. By engaging in the above-described acts and practices, Atlantis Defendants have committed an **unfair business practice** within the meaning of the UCL. It was unfair for Atlantis Defendants to charge Plaintiffs the full amount of the daily room rate when Plaintiffs did not receive any benefit whatsoever aside from docking the vessel in the marina. This was due to no fault of Plaintiffs.

21. By engaging in the above-described acts and practices, Atlantis Defendants have committed an **unlawful business practice** within the meaning of the UCL. Specifically, it was unlawful for Atlantis Defendants to charge Plaintiffs' American Express card without written or oral authorization.

22. By engaging in the above-described acts and practices, Atlantis Defendants have committed a **fraudulent business practice** within the meaning of the UCL. Specifically, it was fraudulent for the Atlantis Defendants to charge the entire daily room rate without authorization, and without providing any services to Plaintiffs that was included in the room charge, including that fact that Plaintiffs were not occupying the room.

23. Defendant Amex has committed an **unfair business practice** within the meaning of the UCL by refusing to follow dispute protocols in refunding Plaintiffs' account despite Plaintiffs timely submitting documented evidence that the charges from Atlantis Defendants were unauthorized and not provided.

24. Defendant Amex has committed an **unlawful business practice** within the meaning of the UCL by refusing to follow dispute protocols in refunding Plaintiffs' account despite Plaintiffs

timely submitting documented evidence to Amex that the charges from Atlantis Defendants were unauthorized and not provided.

25. Defendant Amex has committed a **fraudulent business practice** within the meaning of the UCL by failing to properly investigate Plaintiffs' legitimate claims of unauthorized use of Plaintiffs' card, and instead insisting Plaintiffs be responsible for the entire amount charged by the Atlantis Defendants, despite not receiving any services.

26. Plaintiffs have suffered substantial monetary and various other damages that could not have been avoided due to the pandemic. Defendants' acts and practices as described herein have deceived Plaintiffs and thus constitute a fraudulent business practice.

27. Unless Defendants are enjoined from continuing to engage in the omissions of material facts and the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Olen will continue to be injured by Defendant's conduct.

28. Defendant, through its acts of unfair competition, has acquired money from Plaintiffs. Plaintiffs requests this Court to enjoin Defendant from continuing to violate the UCL.

## SECOND CAUSE OF ACTION

### Common Law Fraud

### (Against all Defendants)

29. Plaintiffs repeat and realleges paragraphs 1 through 28 hereof, as if fully set forth herein.

30. To allege a cause of action for common law fraud, a party must allege; (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury.

30. Here, Atlantis Defendants are liable for fraud due to representing that it would be providing services during the time that the RUSKALA was docked at its marina. This representation was false, as the COVID-19 pandemic caused the resort to shutter its doors and offered virtually no services. This

representation was material as Plaintiffs were charged for an array of services that not only were not received, but that were not available. Defendant Atlantis **knew** that its resort was not operating during the pandemic, yet despite this three-month period of the resort being shut, and Plaintiffs having no choice but to leave his vessel docked at the resort, Defendant Atlantis continued to charge and **intended** to charge Plaintiffs the full amount of the resort fee. Plaintiffs were ignorant of this falsity, as Plaintiffs never believed that despite having no choice but to leave his vessel behind, and not receiving any services typically provided by Atlantis, that Plaintiffs would still be charged the full amount of the resort fee. Plaintiffs relied on this assumption when forced to flee back to the United States due to the COVID-19 pandemic and had a right to rely on the fact that given the exceptional and emergency circumstances, that Defendant Atlantis would act reasonably and only charge Plaintiffs for services actually used, and for expenses actually incurred by Defendant Atlantis.

31. As a result of the conduct alleged above, Plaintiffs have suffered consequent and proximate injuries in incurring over $100,000 of unjustified charges, as well as other damages as alleged herein.

32. Defendant Amex is also liable for fraud due to its conduct. Specifically, following Plaintiffs' dispute claim, Amex represented that these charges were validly incurred, and that Plaintiffs were liable for the full amount of the charges incurred, when this representation of fact was simply false. Defendant Amex knew that this information was false, given the plethora of information provided to it from Plaintiffs via its dispute process. Defendant Amex intended that Plaintiffs rely upon the false statement by insisting Plaintiffs are liable for the full amount of the charges, despite not receiving any benefit. As stated herein, Plaintiffs were ignorant of the false statements by Amex given the unfamiliar surroundings of the pandemic and relied on Amex's assurances that it would not incur charges that were not valid. Plaintiffs had a right to rely upon Amex to rectify these fraudulent charges due to its process of fraud protection, however as defendant Amex failed to correct the fraud, Plaintiffs suffered significant monetary damages.

# THIRD CAUSE OF ACTION

## Negligent Misrepresentation

### (Against all Defendants)

33. Plaintiffs repeats and realleges paragraphs 1 through 32 hereof, as if fully set forth herein.

34. The elements of a negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.

35. Here, Atlantis Defendants are liable for negligent misrepresentation due to representing that they would be providing services during the time that the RUSKALA was docked at its marina. This representation was false, as the COVID-19 pandemic caused the resort to shutter its doors and offered virtually no services. This representation was material as Plaintiffs were charged for an array of services that not only were not received, but that were not available, including a "room rate" despite no one occupying the hotel. Even if the Atlantis Defendants did not know of the impending shutdown of the resort, Plaintiffs believed they were permitted to leave the RUSKALA behind due to the exigent circumstances and state of emergency given the instructions from port authority. Plaintiffs justifiably relied upon the resort to take appropriate measures with respect to the vessel, but not to charge Plaintiffs for resort services that were not only not used by Plaintiffs but were not even offered by the resort altogether. As a result of Defendant's misrepresentation, Plaintiffs have suffered significant monetary damages.

36. Defendant Amex is also liable for intentional misrepresentation due to its conduct. Specifically, following Plaintiffs' dispute claim, Amex represented that these charges were validly incurred, and that Plaintiffs were liable for the full amount of the charges incurred, when this representation of fact was simply false. Defendant Amex knew that this information was false, given the plethora of information provided to it from Plaintiffs via its dispute process. Plaintiffs had a right to rely upon Amex to rectify these fraudulent charges due to its process of fraud protection, however as defendant Amex failed to correct the fraud, Plaintiffs suffered significant monetary damages.

37. Accordingly, Defendants are liable for negligent misrepresentation and Plaintiffs have been damaged in an amount to be proven at trial, but no less than $100,000.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (Against all Defendants)

38. Plaintiffs repeats and realleges paragraphs 1 through 37hereof, as if fully set forth herein.

39. The elements for a cause of action are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881.)

40. Here, all Defendants have been unjustly enriched as the expense of Plaintiffs. Specifically, the Atlantis Defendants has been enriched unjustly by failing to provide services for Plaintiffs yet charging Plaintiffs without its consent or agreement for the **full amount** of the resort lodging and fees. Not only did Plaintiffs not receive any of these services, but Atlantis Defendants were not even **offering** any services, given that the hotel and the resort was nonoperational due to the COVID-19 pandemic. As such, Defendant Atlantis was unjustly enriched by charging Plaintiffs an excess of $100,000 yet not offering any services aside from electricity to the boat in return.

41. Defendant Amex has been unjustly enriched by profiting off the improper charges from Atlantis and not refunding Plaintiffs, despite Plaintiffs repeated requests to Amex that these charges were unauthorized and following the Dispute Protocol as outlined in the service member agreement. Defendant Amex profited in the form of their transaction fees at the direct expense of Plaintiffs, who was forced to pay for services it did not incur, in direct contravention of public policy.

42. Both Defendants have been unjustly enriched at Plaintiffs' expense, and Plaintiffs have been damaged in an amount to be proven at trial, but no less than $100,000.00.

# FIFTH CAUSE OF ACTION

## Breach of Contact

### (Against Defendant Amex)

43. Plaintiffs repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44. According to the American Express Chargebacks Dispute Policy Guide[1] ("Dispute Policy") if American Express has enough information and feels the cardholder's dispute is legitimate, the merchant will receive a chargeback and the cardholder will not be responsible for the unauthorized purchase.

45. Here, as a cardmember, Plaintiffs are entitled to ensure that Defendant AMEX follows its policies and procedures with respect to customer disputes. Plaintiffs informed Defendant Amex on multiple occasions that it disputed the charges from Defendant because they were made without authorization, and Plaintiffs were charged for services it did not receive.

46. Defendant breached this agreement between the parties by not following its Dispute Policy, given that Plaintiffs provided evidence in the form of detailed letters through its counsel of the events and complied with all requests for documentation from Defendant Amex. However, due to Defendant Amex's breach of its own protocols, Plaintiffs were damaged in the form of having to pay significant fees that were not authorized nor justified.

47. Plaintiffs performed all its obligations by following the American Express claims resolution protocol as described above. Despite Plaintiffs performing all its obligations under the cardholder agreement and the Dispute Policy and protocols, Defendant Amex fails to take appropriate action and refund Plaintiffs. Accordingly, Plaintiffs have been damaged in an amount to be proven at trial, but no less than $100,000.00.

---

[1] https://www.americanexpress.com/content/dam/amex/ca/en/merchant/static/amex-chargeback-disputes-process-guide.pdf

## SIXTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against Defendant Amex)

48. Plaintiffs repeats and realleges paragraphs 1 through 47 hereof, as if fully set forth herein.

49. California law recognizes in every contract ... an implied covenant of good faith and fair dealing." *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 434 (9th Cir. 2011) (quoting *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235, 83 Cal.Rptr.3d 410 (2008)). A breach of the underlying contract is not required to establish a cause of action for breach of good faith and fair dealing. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998).

50. As a result of the actions of Defendants, set forth hereinabove, Defendant Amex has violated the implied covenant of good faith and fair dealing contained in its own policies. Despite Plaintiffs providing ample evidence to Defendant Amex of unlawful and fraudulent charges it incurred, Plaintiffs' request was denied without sufficient explanation.

51. Accordingly, Defendant Amex breached the implied covenant of good faith and fair dealing with respect to the cardholder agreement and the Dispute policies.

52. As a result of Defendant Amex's conduct, Plaintiffs have been damaged in an amount to be proven at trial, but no less than $100,000.00.

## PRAYER FOR RELIEF

1. For an order awarding Plaintiffs restitution and/or disgorgement and other equitable relief as the Court deems proper;

2. For an order awarding punitive damages to Plaintiffs as to the appropriate cause of action;

3. For an order enjoining Defendants under Business and Professions Code §17203 from continuing to engage in business acts and practices, or any of them, which are unlawful, unfair, or fraudulent, as alleged herein; and

4. For an order awarding Plaintiffs pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other as may be applicable; and

5. For an order awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands trial by jury on all issues so triable.

DATED: APRIL 4, 2022

By: /s/ *signature*

Julie A. Ault, Esq.
Kaelee M. Gifford, Esq.
Attorney for Plaintiffs Olen Properties Corp. and Igor Olenicoff